In re Ronald Gene THORSON, Soc. Sec. 503–36–3713; no other name or trade name in last 6 years, Debtor.

The FIRST NATIONAL BANK IN SIOUX FALLS, SOUTH DAKOTA, Plaintiff,

v.

Ronald Gene THORSON, and Rick A. Yarnall, as Trustee of the Estate of the above Debtor, Defendants.

No. 480–00101.

United States Bankruptcy Court, D. South Dakota.

July 18, 1980.

Robert E. Hayes, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for plaintiff.

Rick A. Yarnall, Sioux Falls, S.D., Trustee in Bankruptcy.

J. Bruce Blake, Sioux Falls, S.D., for defendant Thorson.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

Ronald Gene Thorson filed a Chapter 13 Petition on April 15, 1980. On May 21, 1980, the First National Bank in Sioux Falls, Movant, filed a Motion to Compel Trustee to Prevent Fraudulent Transfer. Movant alleged that Debtor sold real property shortly before filing bankruptcy for a price considerably less than the fair and reasonable value of the property. Debtor's Answer denied that the real property had been sold for less than a fair and reasonable value.

This Court held a hearing on this matter on June 26, 1980. At that hearing the Court and Counsel treated the Motion as a Complaint to Avoid a Fraudulent Transfer, Section 548. The Court allowed testimony to be introduced on the issue of whether Debtor sold the real property for fair market value. Based on the pleadings and evidence presented at the hearing, this Court makes the following findings of fact.

Movant's witness, Ray Ordinachev, an experienced real estate broker, testified that in 1979 Debtor employed him to locate property where future restaurants could be located. Ordinachev located the subject commercial real property and Debtor purchased the same for a total cost of approximately $88,500.00. At the same time A. C. Precision Company purchased an adjoining lot for the price of $27,000.00. Although Debtor paid the entire purchase price for the two lots, title was taken in both Debtor's and Ordinachev's names. Ordinachev later executed a quit claim deed to any interest he might have had in the property.

Later, Debtor developed financial and marital difficulties. Debtor, who was about to receive custody of his children, needed cash for his business and to purchase a home. Debtor approached A. C. Precision Company to sell this realty interest. A. C. Precision Company is a California corporation of which R. M. Yates, Debtor's brother-in-law, is the substantial majority shareholder of the corporation. Yates retained counsel to handle the transaction. Counsel hired a realty firm to appraise the real property being offered for sale by Debtor. The realtor appraised the property at $70,000.00. McDowell, in making that appraisal, admittedly relied upon other commercial real estate brokers' opinions.

Based on the appraisal made by the realtor, Debtor sold the real property to A. C. Precision Company for $70,000.00. A. C. Precision Company paid Debtor $55,000.00 in cash and gave Debtor a promissory note for $15,000.00 at no interest. After A. C. Precision Company paid Debtor the $55,000.00 in cash, Debtor spent $19,000.00 on the purchase of a new home, $21,000.00 on the purchase of life insurance, and applied the rest to attorney fees and his business.

Movant's realtor expert testified that at the time of sale, market conditions were different than they were at time of acquisition. A slowdown in the economy along with rising interest rates had left the real estate market depressed. According to this witness, the market price of Debtor's real property was between a high of $91,000.00 and a low of $70,000.00. He stated that although the property in his belief could have been sold for more, given time, the $70,000.00 was on the low side of the market value of the property.

After Debtor sold the property to A. C. Precision Company, Debtor assigned the A. C. Precision Company promissory note for $15,000.00 to R. M. Yates. According to a written agreement between Debtor and R. M. Yates, the consideration for the assignment was that R. M. Yates agreed not to initiate any legal proceeding against Debtor relating to a promissory note R. M. Yates had signed as a co-maker or guarantor in connection with a bank loan of Debtor.

It should be noted that Movant had no security interest in either the money that was used to purchase the property or the real property.

This Bankruptcy Court holds that the $70,000.00 price paid by A. C. Precision Company to Debtor for the subject real

property was a proper fair market price. At the time Debtor sold the property, the market for real estate was in a depressed condition due to the economic slowdown and high interest rates. Further, Debtor needed money badly to purchase a home and for his business. Thus based on the appraisal and the testimony of Movant's realty expert, A. C. Precision Company purchased the property from Debtor for a then adequate and fair consideration of $70,000.00. Movant's own witness, the realtor, testified that although on the low side, the price paid by A. C. Precision Company was still somewhere in the range of the market value of the property. Based on these facts the Court can only conclude that $70,000.00 purchase price represented a fair and reasonable market value for the property.

This Court makes no determination on the issue of whether the assignment of the note by Debtor to R. M. Yates, Debtor's brother-in-law, was a fraudulent or preferential transfer. The pleadings did not present that issue to the Court and all the necessary parties to decide that issue were not before this Court.

Movant's Motion to Compel Trustee to Prevent Fraudulent Transfer is denied.